FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KARLYN L. K.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:17-CV-00278-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 11, 12. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Jurisdiction

Plaintiff filed her application for supplemental security income on February 11, 2014. AR 175-80. Her alleged onset date is September 26, 2012. AR 41. Her application was initially denied on May 29, 2014, AR 82, and on reconsideration on August 26, 2014, AR 93.

Administrative Law Judge ("ALJ") Marie Palachuk held a hearing on May 5, 2016. AR 37-69. On June 2, 2016, ALJ Palachuk issued a decision finding Plaintiff ineligible for disability benefits. AR 20-32. The Appeals Council denied Plaintiff's request for review on June 13, 2017, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits on August 11, 2017. ECF No. 1. Accordingly, her claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Plaintiff was 47 years old on the date the application was filed. AR 30. She has a GED and is able to communicate in English. *Id.* She has never held employment. AR 22.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from February 11, 2014, the date the application was filed. AR 20-32.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2014, her application date (citing 20 C.F.R. § 416.971 *et seq*.). AR 22. The ALJ also found there was no indication Plaintiff had ever engaged in substantial gainful activity. *Id.*

**At step two**, the ALJ found Plaintiff had the following severe impairments: schizoaffective disorder, dysthymia, panic disorder without agoraphobia, and personality disorder (not otherwise specified) (citing 20 C.F.R. § 416.920(c)). AR 22-23.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 23-24.

At **step four**, the ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple routine tasks and instructions and is able to maintain attention and concentration on simple routine tasks for two hour intervals between regularly scheduled breaks; she can have only occasional and simple changes in work setting or routine, and she can engage in only occasional simple decision-making; she should have no fast paced production rate work, such as assembly line type work; she can have only incidental superficial contact with the public and coworkers, meaning she can work

in proximity to but without actual interaction/teamwork with the public and coworkers; and she may need encouraging reminders of instructions approximately once a week. AR 24.

The ALJ determined Plaintiff has no past relevant work so transferability of job skills is not an issue. AR 30.

**At step five,** the ALJ found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 30-31. These include laundry worker II, stock selector, and officer cleaner I. AR 31. The ALJ consulted a vocational expert in making this determination. *Id*.

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues that the ALJ erred by (1) improperly rejecting the opinions of Plaintiff's medical providers; (2) improperly rejecting Plaintiff's severe impairments at step two; (3) rejecting Plaintiff's subjective complaints; and (4) failing to meet the burden at step five to identify specific jobs available in significant numbers which Plaintiff can perform in light of her specific functional limitations. ECF No. 11 at 5.

//

//

## VII. Discussion

### A. The ALJ did not err with the weight given to Plaintiff's medical providers.

#### a. Legal standard

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Mahlon Dalley, PhD

Dr. Dalley performed a psychological/psychiatric evaluation on Plaintiff on November 4, 2011. AR 315-20. Dr. Dalley observed symptoms of depression, anxiety, and hallucinations in the examination. AR 315. Dr. Dalley opined that these symptoms would "most likely affect [Plaintiff's] motivation" for work activities, attendance, and "probably" would affect her concentration. AR 316. However, Dr. Dalley noted that Plaintiff was not receiving mental health treatment or medication, and Dr. Dalley recommended treatment through a social services medical program. AR 316-17.

The ALJ gave little weight to this opinion. AR 28. The ALJ stated that the record provided little basis for the limitations opined because Plaintiff's mental status examination and test findings did not support significant findings or limitations. *Id.* A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The record supports this finding. Plaintiff's mental status examination showed her to be "loquacious" with "demonstrated tangential content," to be oriented, to recall past events with clarity, to exhibit average mental control, to demonstrate an average fund of knowledge and the ability to think abstractly, to exhibit average mental control, including good insight and fair judgment, and her score on the mini mental status examination was a 27 out of 30, with a 24 being the cut-off for impairment. AR 317-18.

While Plaintiff endorsed hallucinations, including during her examination, Dr. Dalley found Plaintiff to have a "tendency to over report psychopathology on the [Personality Assessment Inventory 'PAI']" and thus could not interpret her test results. AR 317. An ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Finally, the ALJ also rejected the opinion because it was almost a year prior to Plaintiff's alleged onset date. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.2d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)). In contrast, the ALJ relied more on the most recent opinions, specifically

the opinion of testifying medical expert Dr. Nancy Winfrey, PhD, who also had the benefit of review of the entire record. AR 30.

### c. Dr. Jay Toews, EdD

Dr. Toews evaluated Plaintiff on December 26, 2012. AR 321-26. Dr. Toews reported that Plaintiff responded to internal stimuli during the evaluation, including audible, visual, and olfactory hallucinations, and that her thinking was disrupted by these internal stimuli. AR 321, 324. Based on the evaluation, Dr. Toews found Plaintiff would have multiple limitations, including remembering simple instructions, remembering job routines, interacting with coworkers or the public, and completing a work day or work week. AR 324-25.

The ALJ gave little weight to this opinion. AR 28. In particular, she noted that Plaintiff's symptoms are treatable, but she chooses not to seek treatment for them. *Id.* This is supported by the record. Both Dr. Amy Dowell, MD, an examining doctor, and Dr. Winfrey, the testifying medical expert, opined that Plaintiff's condition was treatable.[1] AR 47-48, 330. These doctors, particularly the testifying medical expert, contradict the opinion of Dr. Toews, and constitute substantial evidence for discrediting Dr. Toews' opinion. *Tonapetyan v. Halter*,

---

[1] The Court further addresses Plaintiff's failure to seek treatment in the section on Plaintiff's subjective symptom testimony. *See infra* at pp. 17-19.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

242 F.3d 1144, 1149 (9th Cir. 2001).; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Even still, the ALJ did include some limitations consistent with Dr. Toews' opinion in the residual functional capacity. AR 24. In particular, the ALJ limited Plaintiff to simple, routine tasks and no more than incidental interaction with coworkers and the public. *Id.*

### d. Dr. John Arnold, PhD

Dr. Arnold evaluated Plaintiff on January 30, 2014, on behalf of the Washington Department of Social and Health Services. AR 332-35. He opined marked limitations in her ability to: understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 334.

The ALJ gave little weight to this opinion. ALJ Palachuk noted it was the "most cursory examination of record with little basis provided for any of the limitations indicated." AR 28. Additionally, the report was internally inconsistent. *Id.* Check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are

inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

Despite the opined limitations, Dr. Arnold's mental status examination was normal in all areas but memory. AR 335. Plaintiff was not responding to internal stimuli, her thought processes were devoid of clearly delusional content, she exhibited the ability to think abstractly, and despite being slow, her concentration was intact. *Id.* Dr. Arnold did observe some depressed and anxious mood, but he described Plaintiff has cooperative and generally congenial, dressed for the occasion, and having logical and progressive speech. AR 334. There is very little other than Plaintiff's subjective testimony to support Dr. Arnold's findings. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

### e. Dr. Amy L. Dowell, MD

Dr. Dowell performed a consultative examination on Plaintiff on May 15, 2014. AR 327-31. Dr. Dowell opined that Plaintiff's schizoaffective disorder is a treatable condition, and even without, the condition was only mildly affecting Plaintiff at the present time, but decompensation was a risk to her ability to work. AR 330-31. Dr. Dowell also found that Plaintiff's anxiety and panic attacks were treatable, with a good likelihood of recovery with appropriate treatment. *Id.* Dr.

Dowell also found that Plaintiff's lack of education, not her mental impairments, would contribute to the need for special or additional workplace instructions. AR 331.

The ALJ gave some weight to the portions of the assessment that were vague and speculative. AR 29. Dr. Dowell did not provide the degree of difficulty that Plaintiff would experience due to her symptoms. However, those limitations consistent with Dr. Winfrey's testimony at the hearing were given great weight. AR 29. An ALJ may give more weight to an opinion that is specific than one that is vague. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Consistent limitations were included in the residual functional capacity, including limitations to simple, routine tasks and instructions, a bar on fast-paced work, and "encouraging reminders" of workplace instructions. AR 24, 29.

**B. The ALJ did not err at step two.**

At step two in the sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to

dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Under step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d).

Plaintiff alleges the ALJ erred by failing to find her tic disorder and social phobia as severe impairments, resulting in harmful error. ECF No. 11 at 15. Dr. Dallon diagnosed both of these conditions in November 2011, which as noted above is outside of the relevant period. AR 315. However, diagnosis alone is insufficient to show harmful error.

Plaintiff was found to have at least one severe impairment, and this case was not resolved at step two. Thus, if there was any error in the ALJ's finding at step two, it is harmless, as all impairments, severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity. *See Short v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).

The record does not support that Plaintiff is limited in pushing, pulling, reaching, handling, and fingering as she alleges in her briefing. ECF No. 11 at 15. No doctors after 2011 even mention this impairment. Additionally, her social phobia was not opined by later doctors either, but nevertheless the ALJ did place a limitation on contact with coworkers and the public in her residual functional capacity. AR 24.

### C. The ALJ did properly discredited Plaintiff's subjective claims.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

First, the Court notes that there is affirmative evidence of malingering in the record in this case. As discussed prior, Dr. Dalley was unable to interpret the results of Plaintiff's PAI due to over reporting of her symptoms. AR 317. Malingering alone can satisfy an ALJ's adverse credibility determination, *Tommasetti,* 533 F.3d at 1039, but in this case the ALJ provided additional clear and convincing reasons for the adverse finding. Each of these reasons were supported by evidence in the record, to which the ALJ pointed. AR 25-26.

A significant factor in the ALJ's determination was Plaintiff's failure to seek treatment for her impairments. AR 25. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that her inability to seek treatment is a condition of her impairment, but the ALJ detailed how this is inconsistent with the record. Plaintiff was able to assist her boyfriend during a medical crisis and moving homes with

him. AR 57-60. The record also contradicts Plaintiff's allegations because she admits to previously seeking treatment and taking medication, AR 327, and Dr. Winfrey specifically noted in her testimony that someone with Plaintiff's alleged symptoms would have sought treatment, AR 44. Her lack of treatment is significant because both Dr. Dowell and Dr. Winfrey opined that her condition is treatable, if Plaintiff would seek the treatment. AR 47-48, 330.

Finally, the ALJ also noted a "significant disconnect" between the reports, testimony, and objective findings. AR 26. Most of Plaintiff's mental status examinations were unremarkable, as were her mental testing scores, when valid. AR 317-18, 329, 335. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148.

In conclusion, the ALJ provided numerous reasons for the findings related to Plaintiff's credibility that are supported by the record, in addition to affirmative evidence of malingering in the record. The Court does not find the ALJ erred when assessing Plaintiff's subjective complaints.

**D. The ALJ did not err at step five.**

Plaintiff argues that had her symptom testimony and the medical evidence discussed above been properly considered, a different residual functional capacity and resulting hypothetical to the vocational expert would have been reached, and

as a result, the ALJ erred in her burden at step five. ECF No. 11 at 19-20. This is merely an attempt to repeat the same arguments discussed above. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations and the resulting vocational expert hypothetical was incomplete. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

### VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 12,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 30th day of July, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 20